Edwards, Ch. J.
delivered the following opinion o£ ⅛⅛ cour(; ; — "fhe heirs of Elijah Harland, exhibited their hill against William Eastland, in which they charge, that their ancestor was the proprietor of 200 acres of land, vv¡th an indisputable title ; that the defendant, Eastland, pretended to have a tide to 7Q0 acres of land on Licking,' being a moiety of 1400, located and surveyed by John Durham, near the upper blue licks : that their ancestor . , Vxr* • • 1 . • • , 1 wa8 a resident ot Virginia, and was never in Kentucky;, that the defendant was well acquainted with the 20Q, acreSi and applied to their ancestor, in Virginia, to exchange the said, 700 acres, for the said 200 acres of land ; which exchange was effected. They further charge, the saij Eastland, upon the exchange, assured their ancestor, that the said 700 acres, was first, second, and-third rate land ; and that it was free from all incum-berences’ and interfering claims ; and, that he would., convey it with a general warranty ; that their ancestor, relying on these assurances, exchanged the 200 acres for the said 700 acres, and bound himself to convey to East-land the 200 acres, which he has since done ; that East-land executed his bond for the 700 acres, which is exhi-,, ted ; which bond binds Eastland to make, or cause tobe made, a good and sufficient title, upon request, &c.
The bill charges, that the exchange was fraudulently obtainec1’ m as mucb 36 die greater part of the 700 acres, °f land, is of very inferior quality; and because there are a number of interfering claims, as is alleged, which, were known to, but concealed by Eastland, at the time °f the contract. The title papers are exhibited of those claims, and the bill alleges, that they are superior to the c|ajm under which Eastland claims title,
The bill further alleges, that the defendant fraudulent-, ly procured Durham to make a special warranty deed for *591 the TOO acres, instead of making a general warranty title himself; and the bill, and amended bill, pray that the contract and exchange, may be set aside ; and the 200 acres restored to the complainants ; or* if the court should not think proper to set aside the exchange, and the defendant should appear to be unable to make a general warranty title for the 700 acres, that the value of the 200 acres may be decreed them ; and for such other relief, as in equity, and the nature of their case, may be proper.
The answer of Eastland, denies that the contract should be considered as an exchange ; denies that he knew of any interfering claims, at the time of the contract ; or that the claims which have since come to light, are superior to that under which he holds. He further denies that he represented any particular proportion of the land to be first, second, or third rate land ; says that at the time of the contract with the ancestor of the complainant, he held the bond of Durham, for the 700 acres, being a moiety of 1400 acres, held by him, of a tract of -acres, located by him in the name of Burton ; that he had never seen the land, and so informed the ancestor of the complainants ; but that he had been informed that some of the land was first rate, some second, and some third rate. He further says he was always willing to make z general warranty, if he had been required to do so ; but says he never was, by the complainants, or their ancestor. That the deed from Durham to Elijah Harland, was made, to save the trouble and expence of two conveyances, with the consent of George Porterfield, who was sent by James Harland, Elijah Harland’s agent, to receive the deed; and that he is willing to give any further assurances, &c.
The circuit court, upon the hearing of the bill, decreed a dismission thereof, with costs ; but afterwards, during the same term, amended the decree, by directing the defendant, Eastland, to execute, in the clerk’s office, to the complainants, a bond, or other deed, with proper covenants, binding him to Warrant and defend the title of the 700 acres conveyed by Durham to Elijah Harland, the ancestor of the complainants.
From this decree, the complainants have appealed to. this court.
It seems to us that the conduct of Eastland, as made *592 bftf by the- exhibits and depositions in the cause, has been, throughout, fair, and free fróffi any imputation of fraud or misrepresentation. There is no evidente of his having any knowledge of the interfering claims, at the time of the contract; ór of his having made any representation, of any kind, On the subject. Nor is there any evidence that he represented, or pretended to know the respective proportions of first, second and third rate land, contained in the tract. The evidence proves that there is, in fact, land of all the three qualities in the tract conveyed ; and one witness says, there is one third of it first rate.
i Br* Ch, Rep. 75 — 4Br. Ch. Rep. 80— 1 Ves. jun. 565 —-i Bac. Ab. Ill,
If Eastland had come into equity, as complainant, to enforce a specific execution of the contract, and to get á decree for the 200 acres, it might make a question, whether equity would compel the heirs of Harlahd to part with the legal title to the 200 acres, when it appeared the title of the 700 acres was embarrassed with interfering claims. But Eastland having already attained the legal title to the 200 acres, there can be no ground for setting aside the contract, and wresting from him the legal title, unless he had been guilty of some fraud, in obtaining in And the circumstance of claims interfering with the 700 acres, afterwards arising, but which were unknown at the time, and concerning which, he made no representation, furnishes no ground from whence fraud can be infered.
Eastland having bound himself, in his bond, to make, ór cause to be made, a good and sufficient title, it a-mourtted to a warranty against the consequences of interfering claims ; and the complainants, when injured thereby, must resort to that warranty for redress.
Eastland’s conduct, with respect to the execution of the deed from Durham, instead of himself, also seéms free from the imputation of fraud. His answer, on that subject, is fully supported by the evidence in the cause. He was bound to convey, or cause to be coiiVeyed, &c. j the latter of which he has done. Nothing was wanting but a warranty, completely to fulfil his covenant.
As Harland and his representatives still held East-land’s bond, that bond itself furnishes a complete remedy, in case they should ever be evicted, or if it shall ever turn out that the title is nqt good and sufficient;
In addition to this, the circuit court decreed, that the *593 'defendant shall execute ¿noth'er bond, ⅛ deed, containing ⅛ covenant of warranty of the title. This was all that was necessary for the security of the complainants. The legal title had already been conveyed by Durham ; and the warranty of that title, directed to be executed by Eastland, gave the complainants the full measure of the contract made with their ancestor.
, v,‘ See M'ton*
There is nothing in the transaction like an exchange ; which is a technical mode of conveying at common law; and is never rnáde Without the technical terrrt exchange being used. Here, Eastland gave hi’s boiid for 700 acres, for which he received, from. Elijah Harland, an assignment of a bond upon James Harland, for 200 acrés ; and the conveyance Was made by James Harlahd.
It has been urged in argument, that it is not shewn that Durham had any title. His having title; is not questioned in the bill ; but, by strong implication, is admitted. The charge is not that he had no title ; but that there were interfering titles, superior to his; It was, therefore, not necessary, and the defendant Was n6t called upon to shew his title.
With respect to the interfering claims; the title papers of which are introduced into the record, it need only be remarked, that it would seem improper to determine, id this collateral way, whether they are better or worse, than Durham’s or Burton’s title. There is, however, no evidence, from which their superiority, if they are superior, can be made appear in this cause.
There is no pretence for decreeing to the complainants, the value of the 200 acres; IF ever they shall be evicted from the 700 acres, or if the titles of any of the other interfering claims should hereafter prove superior, the válue of the 700 acres, will be the proper measure of compensation;
There is some informality id the decree, in hspgjpg first dismissed the hill, and then decreeing that the defendant should execute a bond, of other deed, &c. without expressly setting aside so much of the decree as directed a dismission of the bill. But we are of opinion it w;as virtually done by the ainended decree. The object of the bill was to set aside the contract, Or get the value of the 200 acres, by way of damages. The complainants were entitled to neither of those ; nor were they strictly entitled, in this suit, to any relief : but the de- *594 fondant having offered to give any further assurance, we are of opinion theycourt did right in directing him to execute further assurance, with covenant of warranty. but it would have been iniquitous to have compelled, the defendant to pay the costs of the suit, which accrued ⅛ consequence of the complainant’s asserting a claim to which they had no right, merely because they obtained that which they disclaimed receiving, and which they might have had without such expence. We think the decree substantially right, upon the whole merits of the case. — ,—-Decree affirmed.